UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
United States,                                    :
                                                  :
                        Plaintiff,                :
                                                  :
        -against-                                 :                    08 Civ. 11144 (KMW)
                                                  :                    OPINION & ORDER
Balduino Lemos,                                   :
                                                  :
                        Defendant.                :
----------------------------------------------------x

KIMBA M. WOOD, U.S.D.J.:

    The United States of America (the "Government") brings this action against Defendant

Balduino Lemos ("Defendant"), seeking to revoke and set aside Defendant's citizenship and

cancel his Certificate of Naturalization, pursuant to Section 340(a) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1451(a).  The Government now moves for summary

judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").  Defendant

opposes the Government's motion for summary judgment, and moves to dismiss the action

pursuant to Rule 12(b)(6) of the FRCP.

    For the reasons stated below, the Court (1) DENIES Defendant's motion to dismiss, and

(2) GRANTS the Government's motion for summary judgment.

    I.      Background

    The following facts are undisputed by the parties:

    Defendant is a native of the Dominican Republic, who entered the United States on

January 15, 1991, as a lawful permanent resident.  On June 27, 1996, Defendant filed an

Application for Naturalization with the U.S. Immigration and Naturalization Service ("INS").

On his application, Defendant stated that he had never (1) knowingly committed a crime for

which he had not been arrested, or (2) been arrested or convicted for breaking or violating the law.

On July 19, 1996, Defendant was arrested for attempting to sell cocaine to a Suffolk County police officer. On October 7, 1996, Defendant was interviewed under oath by an INS Examiner about his naturalization application. During his interview, the INS Examiner asked Defendant whether the answers on his application concerning his criminal history were still correct. Defendant responded "yes" and did not tell the Examiner about his July 1996 arrest.

About six months later, on March 28, 1997, the INS sent Defendant a notification form telling him to appear for a naturalization ceremony on April 18, 1997. The form included seven questions about events that had taken place after October 7, 1996, the date of Defendant's INS interview. Two of the questions on the form were whether Defendant (1) had knowingly committed a crime for which he had not been arrested, or (2) had been arrested or convicted for violating a law. Defendant answered "no" to these questions and signed the form certifying that his answers were true and correct.

Close to the time Defendant received the form, he pled guilty to attempted criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39 (he pled guilty on April 1, 1997). He was sentenced to five years probation.

On April 18, 1997, at his naturalization ceremony, Defendant gave his completed form to the INS and then took the oath of allegiance and was admitted as a United States citizen. He was thereafter issued a Certificate of Naturalization.

About four years later, on March 27, 2001, the Government sent Defendant a letter notifying him that it intended to bring a civil action against him, seeking to revoke his United States citizenship because he had lied about his criminal history during the naturalization

process.  On December 22, 2008, the Government brought this action to revoke Defendant's naturalization and cancel his citizenship, on the ground that it was illegally procured or procured through willful misrepresentation or concealment.  8 U.S.C. § 1451(a).

Currently, Defendant has two U.S.-citizen children with his fiancée, who is a lawful permanent resident.  Defendant is employed as a sales representative for a beer distribution company, and earns approximately $75,000 a year.  He is the main financial support for his children; his fiancée works only part-time.

The Government now moves for summary judgment.  Defendant opposes the Government's motion and moves to dismiss the complaint pursuant to Rule 12(b)(6), as barred by the doctrines of laches and equitable estoppel.

II.     Analysis

A.  Defendant's Motion to Dismiss

The Court holds that the action is not barred by laches or equitable estoppel.

1.  Laches

a.  Legal standard

There is no statute of limitations on a denaturalization proceeding brought by the Government.  See Costello v. United States, 365 U.S. 265, 283 (1961) [hereinafter "Costello"].

The defense of laches is generally not available against the Government.  See United States v. Angell, 292 F.3d 333, 338 (2d Cir. 2002) ("laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest").  The Supreme Court, however, in Costello, left open the question of whether this general rule applies in denaturalization proceedings.  In Costello, the defendant argued that laches barred the Government from pursuing denaturalization.  The Court noted that many lower courts had held

3

that laches is never available against the Government in a denaturalization action, but that the Supreme Court had never "considered the applicability of laches to a denaturalization proceeding." 365 U.S. at 281. The Court then "assume[ed] the applicability of laches" and found that the defendant had failed to establish the defense. Id. A number of courts have interpreted Costello as "actually foreclosing applicability of the [laches] defense" in denaturalization cases. United States v. Dang, 488 F.3d 1135, 1144 n.7 (9th Cir. 2007) (listing cases). The Second Circuit has not held that the defense is unavailable. See United States v. Oddo, 314 F.2d 115, 118 (2d Cir. 1963) (stating that, for the defendant, "the most favorable view [of Costello] is that the applicability of laches has not been foreclosed" in a denaturalization proceeding, but declining to resolve the issue because the defendant had failed to prove laches).

To succeed on a laches defense, a defendant must show (1) that the plaintiff failed to exercise diligence in pursuing the action; and (2) that the resulting delay caused prejudice to the defendant. See Id. at 119. The "mere passage of time" is not sufficient to establish laches. Id. Rather, to invoke laches, a defendant must show that the lapse of time caused the defendant "actual and demonstrable" prejudice. Id. To establish prejudice, the defendant must prove either (1) that he changed his position in a way that would not have occurred, had plaintiff not delayed, see Conopco, Inc. v. Campbell Soup Co., 95 F. 3d 187, 192 (2d Cir. 1996); or (2) that the passage of time has impaired his ability to defend himself against the action, see Stone v. Williams, 873 F. 2d 620, 625 (2d Cir. 1989).

Based on the Supreme Court's reasoning in Costello, it would be difficult for a defendant who had obtained his citizenship through fraud to establish prejudice on the ground that he changed his position as a result of the Government's delay in pursuing denaturalization. See Costello 365 U.S. at 283. The defendant in Costello had lived in the United States for over sixty-

4

five years and had been a citizen for twenty-seven years.  He had, however, obtained his

citizenship fraudulently.  The Supreme Court held that "depriving [the defendant] of his

fraudulently acquired privilege . . . after many years" did not constitute prejudice, even though

the defendant had "built a life in reliance upon [his] citizenship."  Id.  "The harsh consequences

that may attend . . . the loss of [fraudulently obtained] citizenship" do not give rise to prejudice.

Id. at 283.  The Court went on to hold that the defendant had not shown that the delay had

prejudiced his ability to prove his defenses, and thus denied his claim of laches.  Id.

### b.  Application

Here, Defendant argues that the Government has failed to exercise diligence by waiting

eleven years to bring this action against him.  He claims that revoking his citizenship after such a

delay will cause prejudice to both him and his family.  Defendant states that while the

Government was waiting to bring its case, he established a successful career and stable family

life, and had a second child with his fiancée.  If Defendant's citizenship is revoked, he will be

subject to immediate deportation pursuant the Anti-Terrorism and Effective Death Penalty Act of

1996 ("AEDPA"), because he is an alien convicted of an aggravated felony.  Defendant claims

that, once he is deported, he will not be able to provide for his family, which relies on him for

financial support.

The Government argues that the Court should deny Defendant's motion to dismiss

because the defense of laches is not available against the Government in a denaturalization

proceeding.  Neither the Supreme Court nor the Second Circuit has adopted such a rule,

however, and the Court will not do so here.  The Court assumes the availability of laches.

Unfortunately, Defendant has not shown that he is entitled to a laches defense.

The Government's seven-year delay in pursuing denaturalization (from 2001, when the Government knew of this fraud, until 2008, when the Government brought this action) indicates a lack of diligence.

Despite the Government's delay, Defendant cannot succeed on a laches defense because he has not shown that the delay caused him prejudice.[1] Although the consequences of Defendant's denaturalization are likely to be very harsh, those consequences unfortunately do not meet the very high bar set by the United States Supreme Court in Costello for establishing that Defendant has suffered prejudice as a result of the Government's delay.[2] See Costello, 365 U.S. at 283. Defendant does not contest that he obtained his citizenship through fraud. The fact that he has built a life in reliance on this citizenship, therefore, does not constitute prejudice, at least for the purpose of invoking laches.[3] Defendant has not shown, or even argued, that the delay has impaired his ability to prepare his defense. The Court, therefore, cannot find that the

---

[1]     The Court notes that the Supreme Court and Second Circuit have approved denaturalization proceedings instituted after delays much longer than twelve years. See Costello, 365 U.S. at 268 (proceeding instituted twenty-seven years after naturalization); Oddo, 314 F.2d at 116 (proceeding instituted after twenty-six years). In these cases, the Courts found that the defendants had failed to establish prejudice despite the Government's long delay in pursuing denaturalization.

[2]     The Court is sympathetic to Defendant's situation. It appears that in the fourteen years since he obtained citizenship, Defendant has become a responsible citizen, productive businessman, and supportive father. By revoking Defendant's citizenship, the Government leaves him subject to deportation, which will end Defendant's life in the United States and is likely to deprive his family of his emotional and financial support.

[3]     Even if the Court did not apply Costello, Defendant has not established that he changed his position in a way that would not have occurred had the Government moved against him earlier. See Conopco, Inc., 95 F. 3d at 192 (finding that defendant who had engaged in false advertising was entitled to the laches defense because defendant showed that if plaintiff had brought its claim in a timely manner, defendant would have been able to establish its brand through a different, truthful marketing campaign).  After receiving his citizenship, Defendant pursued a career, continued to support his family, and had a second child. Defendant has not argued that he would not have done these things if the Government had brought this proceeding earlier. It is true that if the Government had proceeded more quickly, Defendant may not have had the opportunity to develop the life he currently leads. For example, if the Government had brought this proceeding in 2002, the Court had resolved it quickly, and Defendant had been deported promptly, then Defendant might not have had his second child, who was born in 2003. This is a hypothetical situation, however, and the Court has no basis for finding that it or any other imaginable set of facts actually would have occurred. Without clearer evidence that Defendant would not have proceeded as he did if the Government had moved more quickly, the Court cannot find that Defendant changed his position because of the Government's delay.

6

Government's delay caused Defendant prejudice.  Because Defendant has not established prejudice, he is not entitled to the laches defense.

      2.  Equitable Estoppel

The Government is not equitable estopped from revoking Defendant's naturalization and canceling his citizenship.  The doctrine of equitable estoppel is available against the Government only where the Government has engaged in "affirmative misconduct." Rojas-Reyes v. INS, 235 F.3d 115, 126 (2d Cir. 2006).  Affirmative misconduct can be shown only where the government engaged in "a deliberate lie or pattern of false promises." Socop-Gonzalez v. INS, 272 F.3d 1176, 1184 (9th Cir. 2001).  Defendant has not identified any affirmative misconduct by the Government, and the record reveals no such misconduct.

Accordingly, the Court holds that Defendant is not entitled to the defenses of laches or equitable estoppel.  The Court DENIES Defendant's motion to dismiss.

      B.  Government's Motion for Summary Judgment

      1.  Legal standard for Summary Judgment

A court must enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008).  The non-moving party cannot, however, "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,

or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal citations and quotations omitted).

### 2.  Legal Standard for Revocation of Citizenship Pursuant to § 340

Section 340 of the INA, 8 U.S.C. § 1451(a), provides for the revocation of an order granting a person citizenship and the cancellation of that person's certificate of naturalization, if the order and certificate were either (1) illegally procured, or (2) procured by concealment of material fact or by willful misrepresentation.

The Government bears a "heavy burden of proof" in a denaturalization proceeding. Costello, 365 U.S. at 269.  "American citizenship is a precious right.  Severe consequences may attend its loss." Id.  In light of these consequences, "naturalization decrees are not lightly to be set aside – the evidence must indeed be 'clear, unequivocal, and convincing' and not leave the issue in doubt." Id. (internal citations omitted).

### 3.  Application

The Government argues that because Defendant did not reveal his conviction during the naturalization process, Defendant's naturalization was (1) illegally procured, and (2) procured by concealment of a material fact and willful misrepresentation.  The Government now moves for summary judgment on these claims.  Defendant does not contest any of the facts laid out in the Government's Local Rule 56.1 Statement, which are summarized above.  The Court finds that there are no genuine disputes as to material facts, and that the Government is entitled to summary judgment on its Section 340 claims.

### a.  Illegal procurement

Naturalization is "illegally procured" when the individual was statutorily ineligible for naturalization before it was granted. See Fedorenko, 449 U.S. 490, 506 (1981).  Section

316(a)(3) of the INA provides that no person shall be naturalized unless the person "during all periods referred to in this subsection has been and still is a person of good moral character." 8 U.S.C. § 1427(a)(3). The burden of proving good moral character is on the alien seeking citizenship. See Berenyi v. District Director, 385 U.S. 630, 636-37 (1967). Defendant submitted his application for naturalization pursuant to Section 316(a) of the INA, 8 U.S.C. § 1427(a), and thus was required to demonstrate good moral character during the five years prior to the date he submitted his application and continuing until he took the oath of allegiance and became a citizen. See id.; 8 C.F.R. § 316.10(a)(1).

The INA enumerates several specific categories of applicants who are precluded from establishing "good moral character," including any applicant who has: (1) committed a violation of any law relating to a controlled substance, 8 U.S.C. § 1101(f)(3); (2) been convicted of a crime involving "moral turpitude," 8 U.S.C. § 1182(a)(2)(A)(i)(I), which the Board of Immigration Appeals has defined to include the criminal sale or attempted sale of a controlled substance, see Matter of Khourn, 21 I. & N. Dec. 1041 (BIA 1997); and (3) been convicted of an "aggravated felony," which includes crimes involving illicit trafficking in a controlled substance, 8 U.S.C. § 1101(f)(8); INA § 101(a)(43)(B); 8 U.S.C. § 1101(a)(43)(B); see also Boatswain v. Gonzalez, 414 F.3d 413, 416 (2d Cir. 2005) (finding that an aggravated felony conviction "erects a per se statutory bar to a finding of good moral character").

The parties do not dispute that while Defendant was applying for naturalization, he was arrested and convicted for attempting to sell cocaine, a controlled substance. The parties also do not dispute that Defendant lied about his conviction during the naturalization process. Defendant thus procured his naturalization illegally. See INA § 340(a), 8 U.S.C. § 1451(a); Fedorenko, 449

U.S. at 506.  The Government is entitled to summary judgment on its claim that Defendant's naturalization is subject to revocation pursuant to Section 340 because it was illegally procured.

b.  Concealment or misrepresentation

To revoke a grant of naturalization pursuant to the "misrepresentation" provision of the INA, the Government must establish that:  (1) the naturalized citizen misrepresented or concealed a fact; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured his citizenship as a result of the misrepresentation or concealment.  See Kungys, 485 U.S. at 767.  A misrepresentation or concealment is material if it "was predictably capable of affecting, i.e., had a natural tendency to affect, the official decision." Id. at 771.  More specifically, materiality depends upon "whether the misrepresentations or concealment had a natural tendency to produce the conclusion that the applicant was qualified [to naturalize]."  Id. at 771-72.

The parties do not dispute that Defendant willfully lied about his criminal history during the naturalization process.  Defendant's lies were material:  had Defendant revealed his conviction, he would not have been able to establish good moral character, and thus would have been ineligible for naturalization.  Accordingly, the Government is entitled to summary judgment on its claim that Defendant's naturalization is subject to revocation pursuant to Section 340, because it was procured by willful concealment or misrepresentation.

III.  Conclusion

For the reasons stated above, the Court DENIES Defendant's motion to dismiss and GRANTS the Government's motion for summary judgment on its Section 340 claims.

Defendant's naturalized United States citizenship is revoked pursuant to Section 340 of the INA, and his certificate of naturalization (Certificate No. 22759896) is cancelled.  Defendant

10

is restrained and enjoined from claiming any rights, privileges, benefits, or advantages under any document evidencing citizenship in the United States, and directed immediately to surrender and deliver to the United States Attorney General the certificate of naturalization issued to him (Certificate No. 22759896), as well as any copies thereof, and any other indicia of United States citizenship in his possession, including any United States passport.

        SO ORDERED.

DATED:      New York, New York
              March 26, 2010

                           KIMBA M. WOOD
                        United States District Judge